---

JEROD BANNON,

     **Plaintiff,**

     v.

MAURY STRAUB,
CITY OF PORT WASHINGTON,
KEVIN HINGISS,
JEREMIAH NYE,
JASON BERGIN,
CRAIG CZARNECKI,
JOHN DOES 1–5, and
ABC INSURANCE COMPANY,

     **Defendants.**

Case No. 25-CV-1558-SCD

---

### DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

---

Jerod Bannon seeks in this lawsuit to make a federal case out of a private family dispute. According to Bannon, his former father-in-law, Maury Straub, entered Bannon's home without permission, damaged the home's door, and physically attacked Bannon, all because Bannon argued with one of his sons (i.e., Straub's grandson). The police showed up, and, despite Bannon demanding that Straub leave, they allowed Straub to remain inside the home to talk it out. Bannon believes the police kowtowed to Straub because he used to be the sheriff of the county they patrolled in.

Unsatisfied with the police response, Bannon sued Straub, the responding officers, and others in federal court. Bannon alleges that Straub and the officers violated his constitutional rights. He also alleges that the police department failed to properly train and supervise the officers. The defendants have moved to dismiss the complaint, arguing that it fails to state a

claim to relief that is plausible on its face. I agree. I also agree that Bannon's amended complaint fails to cure the defects in the original complaint. Accordingly, I will grant the defendants' motions to dismiss this entire action.

## BACKGROUND

This case involves an incident that occurred on February 7, 2024, at Bannon's residence in Port Washington, Wisconsin. *See* Compl. ¶¶ 4, 15–16, ECF No. 1. Bannon and his ex-wife don't live together, and they share custody of their twin boys. *Id.* ¶ 14. While at Bannon's house on February 7, one of the twins called his mother and said that he'd had an argument with his father. *Id.* ¶ 15. The mother then called Straub (her father) and told him about the argument. After speaking with his daughter, Straub and his wife went to Bannon's house, entered through "a locked garage door by using a code," and damaged the door. *Id.* ¶ 16. "Straub immediately attacked Bannon and yelled and screamed." *Id.* ¶ 17. Someone contacted the police. *See id.* ¶¶ 18, 20.

Port Washington police officers Jeremiah Nye, Jason Bergin, and Craig Czarnecki responded to the call. *See* Compl. ¶¶ 8–10, 18. Bannon told the officers that Straub had entered his home without permission and had damaged his door. *Id.* ¶ 19. Straub told the officers that he used to be the sheriff of Ozaukee County and that "he had a right to be present because he was the grandfather of the twin boys." *Id.* ¶ 20. Out of deference to Straub and his former position as an elected sheriff, the officers did not arrest or cite Straub for breaking into the home, causing a disturbance, and breaching the peace. *Id.* ¶ 21. Nor did they remove him from the property. *Id.* ¶ 22. Instead, they "allowed [Straub] to participate in discussions with Bannon and the officers." *Id.*

2

Bannon later sued Straub and the officers in federal court. *See* Compl. ¶¶ 5, 8–10. Also listed as defendants are the City of Port Washington, Kevin Hingiss (the City's chief of police), five unnamed City police officers, and the City's unnamed insurance carrier. *See id.* ¶¶ 6–7, 11–12. On December 9, 2025, the City defendants moved to dismiss Bannon's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* City Defs.' Mot. Dismiss, ECF No. 5. Straub filed his own Rule 12(b)(6) motion the following day. *See* Straub's Mot. Dismiss Compl., ECF No. 10. After Bannon failed to respond to the motions within the time required by the local rules, *see* E.D. Wis. Civ. L. R. 7(b), Straub moved for dismissal under Civil Local Rule 7(d) (E.D. Wis.) and for sanctions under Rule 11 of the Federal Rules of Civil Procedure. *See* Straub's Mot. Sanctions, ECF No. 20. Bannon subsequently moved for an extension of time to respond to the motions, *see* ECF No. 22, which I granted over the defendants' objections, *see* ECF Nos. 24, 25 & 26. Bannon filed a brief in opposition to the defendants' motions on February 6, 2026. *See* Pl.'s Resp., ECF No. 27.

That same day, Bannon filed an amended complaint against Straub, the City, Officer Bergin, Officer Czarnecki, unnamed City police officers, and the City's unnamed insurance carrier. *See* Am. Compl., ECF No. 28. The amended complaint does not list Chief Hingiss or Officer Nye as defendants; however, it does include two new defendants: Port Washington police officer Kirstin Larson and Straub's unnamed insurance carrier. Straub has moved to strike the amended complaint under Civil Local Rule 7(h) (E.D Wis.). *See* Straub's Mot. Strike, ECF No. 31.

## MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi.*

3

*Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "To survive a motion to dismiss for failure to state a claim, the . . . complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Milchtein v. Milwaukee County*, 42 F.4th 814, 821 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In reviewing a Rule 12(b)(6) motion, courts must "accept the well-pleaded facts in the complaint as true and draw reasonable inferences in the plaintiff's favor." *Bronson v. Ann & Robert H. Lurie Child.'s Hosp. of Chi.*, 69 F.4th 437, 448 (7th Cir. 2023) (citing *KAP Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022)). "[B]ut legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.* (quoting *KAP Holdings*, 55 F.4th at 523).

## DISCUSSION

The defendants argue that the original complaint fails to state a plausible claim for relief. They also object to the amended complaint on both procedural and substantive grounds. And according to Straub, the pleadings are so facially deficient that Bannon and his lawyer should reimburse him for the fees he expended in defending against a patently frivolous lawsuit.[1]

### I.     The Original Complaint Fails to State a Plausible Claim for Relief

The original complaint asserts that all defendants unreasonably searched and seized Bannon, in violation of the Fourth Amendment; that the responding police officers failed to

---

[1] All parties have consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 3, 14, 15 & 18.

protect Bannon, in violation of the Fourteenth Amendment; that the City and its police chief failed to train and supervise the officers, in violation of state law; and that, under state law, the City's insurance carrier is directly liable for the damages Bannon suffered as a result of the City defendants' conduct. *See* Compl. ¶¶ 24–45. However, in his response brief, Bannon concedes that the complaint fails to state a plausible claim for relief under the Fourth Amendment and under state law for failure to train and supervise. *See* Pl.'s Resp., at 3–4, 10–11 & n.2. That leaves Bannon's claim that the police officers violated his rights under the Fourteenth Amendment when they allowed Straub to remain in his home.

Bannon brings his Fourteenth Amendment claim via 42 U.S.C. § 1983. "Section 1983 of Title 42 authorizes a federal cause of action against any person who, acting under color of state law, deprives another of rights secured by federal law or the United States Constitution." *Wollin v. Gondert*, 192 F.3d 616, 621 (7th Cir. 1999). The complaint alleges, and the defendant officers appear to concede, that the officers were acting under color of state law during the incident in question. *See* Compl. ¶¶ 8–11, 25; City Defs.' Br., at 10, ECF No. 6 ("The only parties actually possessing state power were the Officers."). However, the officers maintain that the complaint does not tie any individual officer to a specific unconstitutional act, that the officers did not deprive Bannon of his constitutional rights, and that, even if they did, qualified immunity shields the officers from liability.

### A. Personal responsibility

Section 1983 "'creates a cause of action based on personal liability and predicated upon fault.'" *Milchtein*, 42 F.4th at 824 (quoting *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). "A government official is liable only if he personally caused or participated in a constitutional deprivation." *Id.* (citing *Brokaw v. Mercer County*, 235 F.3d 1000, 1018 (7th Cir.

2000); *Vance*, 97 F.3d at 991). "Consequently, a claim will not survive a motion to dismiss unless it 'plead[s] that [a] Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* (quoting *Iqbal*, 556 U.S. at 676).

Bannon asserts that the responding police officers failed to properly protect him from Straub. According to Bannon, the officers knew or should have known that Straub had just broken into his home and that Straub did not have a legal right to be present at the property. Compl. ¶¶ 31–33. He says that, instead of arresting Straub or immediately removing him from the property—as they would have done to an ordinary citizen in similar circumstances—they allowed Straub to remain present because of his former elected position as sheriff. Bannon also suggests that the officers exacerbated his "reasonable fear that Straub could cause injury or be armed." *Id.* ¶ 34. As Bannon sees it, the officers violated his "right to expect that uniformed officers would not allow an uninvited third-party to remain on scene at the Property after breaking in and causing destruction." *Id.* ¶ 35. The officers argue that the complaint fails to connect any officer to a specific illegal act.

The complaint satisfies § 1983's individual-responsibility requirement. The complaint alleges that officers Nye, Bergin, and Czarnecki all responded to Bannon's residence and that the officers failed to arrest or cite Straub or remove him from the property. *See* Compl. ¶¶ 8– 10, 18–23. The fact that the complaint collectively refers to "officers" or "defendants," rather than each officer individually, is not fatal at the pleading stage because Bannon clearly is directing those allegations at all three officers. *See Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) ("In this paragraph, Brooks adequately pleads personal involvement, because he specifies that he is directing this allegation at all of the defendants."); *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("Had Colbert faced a motion to dismiss, where district

6

courts take all well-pleaded allegations as true, his theory of the case that the four named officers were responsible for the alleged damage may have been sufficient.").

### B.      Fourteenth Amendment

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It's unclear from the complaint under which clause Bannon brings his claim, and his response brief adds more confusion than clarity. Nevertheless, the officers insist that the complaint fails to state a claim under either theory.[2]

### 1.      Substantive due process

"Generally, failure to protect does not rise to the level of a constitutional violation." *Windle v. City of Marion*, 321 F.3d 658, 661 (7th Cir. 2003) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)). "Although the Due Process Clause of the Fourteenth Amendment prevents the state from infringing on an individual's right to life, liberty, or property, it does not 'impose an affirmative obligation on the [s]tate to ensure that those interests do not come to harm through other means.'" *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (quoting *DeShaney*, 489 U.S. at 195). "The Due Process Clause limits the state's power to act, but does not act 'as a guarantee of certain minimal levels of safety and security.'" *Ibid.* "Accordingly, the Clause generally does not impose upon the state a duty to protect individuals from harm by private actors." *Id.* (citing *DeShaney*, 489 U.S. at 197).

---

[2] After attempting to refute the officers' argument that the complaint fails to state a plausible equal protection or due process claim, Bannon appears to disclaim both theories, arguing that he is simply alleging a failure-to-protect claim (whatever that means). *See* Pl.'s Resp., at 5–9.

7

"Two exceptions to this principle have arisen from *DeShaney*." *Buchanon-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). "First, the state is duty-bound to protect individuals with whom it has a 'special relationship'; that is, when a state has custody over a person, it must protect him because no alternate avenues of aid exist." *Id.* (citing *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998)). "Second, the so-called state-created danger exception provides that 'liability exists when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced.'" *Id.* (quoting *Monfils*, 165 F.3d at 516).

Because the complaint does not allege that Bannon was in custody at the time of the incident, his due process claim appears to rely on the state-created danger exception. That exception would apply only if (1) the police officers, by their affirmative acts, created or increased a danger that Bannon faced; (2) the officers' failure to protect Bannon from Straub was the proximate cause of his injury; and (3) the officers' failure to protect Bannon shocks the conscience. *See D.S.*, 799 F.3d at 798 (citing *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007)). "This is a narrow doctrine that applies only in 'rare and often egregious' circumstances." *Wilson-Trattner v. Campbell*, 863 F.3d 589, 593 (7th Cir. 2017) (quoting *Doe v. Village of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015)).

Accepting the well-pleaded facts in the complaint as true and drawing all reasonable inferences in Bannon's favor, the complaint fails to allege a plausible claim under the state-created danger doctrine. The complaint does not plausibly suggest that the defendant police officers, by their affirmative acts, created or increased the danger posed by Straub. In fact, the complaint does not allege that the officers engaged in *any* affirmative acts. Rather, Bannon's Fourteenth Amendment claim hinges entirely on the officers' inaction in failing to remove

8

Straub from his home and allowing Straub to talk it out with him and the officers. *See* Compl. ¶¶ 18–23, 31–35; Pl.'s Resp., at 5–10. But Bannon never alleges that the officers' conduct turned "a potential danger into an actual one." *Doe*, 782 F.3d at 918. According to the complaint, Bannon was in actual danger already, as Straub attacked him *before* the officers arrived. *See* Compl. ¶¶ 16–18. In other words, by allowing Straub to remain in the home, the officers placed Bannon in no worse position than if they had not showed up at all. *See Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1176–77 (7th Cir. 1997) (affirming the dismissal of a due process claim filed by the estate of a man who was struck by a car and killed shortly after the police picked up the inebriated man from a nightclub and dropped him off at a gas station); *Doe*, 782 F.3d at 918 ("[The police officer] did not create the danger to Doe, nor did he do anything to make the danger to her worse. When he left Doe with the three young males, he left her just as he found her."); *Windle*, 321 F.3d at 662 ("In focusing exclusively on whether the police acted affirmatively, Appellant fails to grasp that she has to establish that the police failed to protect her from a danger *they created or made worse*. She confuses the inert failure to protect with the proactive creation or exacerbation of danger."). Bannon's speculation that Straub could have been armed, *see* Compl. ¶ 34, simply reinforces that the officers did not create or increase the danger by showing up and mediating the family dispute.

The complaint also does not plausibly suggest that the police officers' failure to protect caused Bannon any injury whatsoever. Bannon says that Straub damaged his door, attacked him, and yelled at him, but that all happened before any of the officers arrived on scene. *See* Compl. ¶¶ 16–18. He also alleges that the officers' actions exacerbated his "reasonable fear that Straub could cause injury or be armed." *Id.* ¶ 34. But a generalized fear, unaccompanied by any bodily harm, is not a constitutional injury. *See Weiland v. Loomis*, 938 F.3d 917, 920 (7th

9

Cir. 2019) ("Plaintiffs depict themselves as frightened but not otherwise injured, and, even in the law of torts, negligent actors are not liable for conduct that threatens bodily harm but produces only emotional distress." (citing Restatement (Second) of Torts § 436A (1965))). The complaint does not allege that Straub harmed Bannon after the officers arrived, and the fear Bannon allegedly endured was not caused by any of the officers.

Finally, the complaint does not plausibly suggest any conscience-shocking conduct by the police officers. Bannon says a jury could find that it shocks the conscience "to allow an angry and violent former father-in-law to remain in a home that is not his with the possibility of being armed." Pl.'s Resp., at 7. Put simply, those allegations do not come close to the level of behavior that courts have found to satisfy the state-created danger doctrine. *See, e.g.*, *Robbin v. City of Berwyn*, 108 F.4th 586, 591–92 (7th Cir. 2024) (explaining that "behavior that is shocking enough to sustain a substantive due process claim typically involves the use of intentional force against an individual's person or the threat of such force" (collecting cases)).

In sum, the complaint fails to state a plausible claim under the Due Process Clause.

### 2. Equal protection

"The Equal Protection Clause of the Fourteenth Amendment . . . is most familiar as a guard against state and local government discrimination on the basis of race, national origin, sex, and other class-based distinctions." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) (citations omitted). Bannon, however, does not allege that he is a member of a protected class. Rather, he appears to proceed under a "class-of-one" theory. *See* Compl. ¶¶ 30–35. "To state a so-called 'class-of-one' equal protection claim, [Bannon] must allege that he was 'intentionally treated differently from others similarly situated and that there is no rational

basis for the difference in treatment.'" *Geinosky*, 675 F.3d at 747 (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)).

The complaint here fails to allege a plausible claim under a class-of-one theory. Although Bannon alleges that the defendant police officers treated *Straub* differently than they would have treated an ordinary citizen (i.e., a non-former sheriff), *see* Compl. ¶¶ 23, 31; Pl.'s Resp., at 5–6, Bannon never suggests that *he* received differential treatment himself, let alone intentional discrimination or harassment. In fact, the complaint alleges that the officers treated Bannon and Straub similarly in all material respects: both were allowed "to participate in discussions" with the officers and neither was cited or arrested. *See* Compl. ¶¶ 18–23, 30–35. Bannon also fails even to allege that there was no rational basis for the officers' actions. "[E]ven at the pleadings stage, '[a]ll it takes to defeat [a class-of-one] claim is a *conceivable* rational basis for the difference in treatment.'" *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015) (quoting *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013)). Here, it's easy to imagine potential reasons why the police chose not to arrest Straub or remove him from Bannon's home, including that they believed mediating what appeared to be a family dispute was the best course of action. Bannon makes no attempt to refute the potential rational bases proffered by the City defendants. *See* City Defs.' Br., at 18–19; Pl.'s Resp., at 5–9.

In a last-ditch effort to save his equal protection claim, Bannon points out that "the Seventh Circuit recognizes that a citizen has an equal-protection 'right to police protection' that is 'uncorrupted by personal animus.'" Pl.'s Resp., at 8 (quoting *Frederickson v. Landeros*, 943 F.3d 1054, 1061 (7th Cir. 2019)). That's true. But the complaint does not include any facts suggesting that the officers harbored any ill will toward Bannon. No pattern of harassment.

11

No prior dealings. Nothing. At most, it can be inferred from the complaint that the officers may have had prior interactions with Straub. *See* Compl. ¶¶ 20–23. A class-of-one claim, however, requires a vindictive or harassing purpose aimed at the *plaintiff*. The complaint here doesn't even allege that the officers knew Bannon prior to the incident in question. That the police might have treated *another* person with too much respect hardly rises to the level of a constitutional injury.

In sum, the complaint fails to state a plausible claim under the Equal Protection Clause.

*    *    *

Because the complaint fails to plead facts showing that the defendant police officers violated Bannon's constitutional rights, qualified immunity shields the officers from civil liability from Bannon's claims. *See Sabo v. Erickson*, 128 F.4th 836, 842 (7th Cir. 2025) (explaining that state officers are entitled to qualified immunity if the plaintiff fails to "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011))).

## II.     The Amended Complaint, Assuming It Was Properly Submitted, Does Not Cure the Defects in the Original Complaint

Despite responding to the defendants' motions to dismiss, Bannon also filed an amended complaint. The amended complaint largely repeats the allegations from the original complaint, with several additions. *See* Am. Compl. ¶¶ 13–27. It also swaps out the Fourth Amendment claim against all defendants for a state property-damage claim against Straub only; asserts a Fourteenth Amendment "failure to protect" claim against the responding

12

officers and Straub; alleges a claim for indemnification against the City; and adds Straub's unnamed insurance carrier to the direct-action claim. *See id.* ¶¶ 28–50.

The defendants urge me to ignore Bannon's amended complaint because it was improperly filed. "[U]nder Federal Rule of Civil Procedure 15, a 'party may amend its pleading once as a matter of course.' Specifically, Rule 15 authorizes a party to amend an unanswered complaint within '21 days after service of a motion under Rule 12(b).'" *Bertha v. Sullivan*, 719 F. App'x 516, 518 (7th Cir. 2017) (citing Fed. R. Civ. P. 15(a)(1)(B)). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "Leave to amend a complaint should be freely given 'when justice so requires.'" *Doe*, 782 F.3d at 919 (quoting Fed. R. Civ. P. 15(a)(2)).

The City defendants filed their motion to dismiss on December 9, 2025, and Straub filed his Rule 12(b)(6) motion the following day. Thus, Bannon had until December 30 or 31 to amend his complaint as a matter of course. Bannon didn't file his amended complaint until February 6, 2026—more than five weeks later.

Nevertheless, Bannon argues that when I granted his motion for an extension of time to respond to the defendants' motions to dismiss, I "essentially" extended the time to file an amended complaint under Rule 15(a)(1)(B). *See* Pl.'s Strike Resp., at 1, ECF No. 33. Courts have come out on both sides of that question. *Compare Hayes v. District of Columbia*, 275 F.R.D. 343, 345 (D.D.C. 2011) ("While the Court has the authority to extend both the time period for filing an opposition to a motion and the 21-day time period for filing an amended complaint as a matter of course under Rule 15, the simple fact that the Court granted an extension of the former time period does not automatically effect an extension of the latter and fuse these two separate deadlines into one, as plaintiff contends.") *with Starr Indem. &*

13

*Liab. Co. v. RXO Capacity Sols., LLC*, No. 3:23-CV-00572-KDB-SCR, 2023 WL 6850577, 2023 U.S. Dist. LEXIS 186515, at \*2 (W.D.N.C. Oct. 17, 2023) ("An extension of time to respond to a motion to dismiss extends the time to amend as a matter of course.").

I need not resolve this issue, however, because the amended complaint remains deficient. The only federal claim Bannon asserts in the amended complaint is for failure to protect, in violation of the Fourteenth Amendment. *See* Am. Compl. ¶¶ 34–40. Bannon attempts to lump in Straub—"a private actor"—with the responding officers by alleging that Straub "acted in concert with the Defendant officers to deny Bannon the legal right to be safe and secure in his residence." *Id.* ¶ 40.

"Under the 'joint action' or 'conspiracy' theory, a private party who conspires with the government to infringe on a plaintiff's rights will be classified as a state actor." *Scott v. Univ. of Chi. Med. Ctr.*, 107 F.4th 752, 757 (7th Cir. 2024) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). "To get past the pleading stage on this theory, [Bannon] must point to more than 'mere allegations of joint action or a conspiracy' to demonstrate that [Straub] acted under color of state law." *Id.* at 758 (citing *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998)). Rather, Bannon must allege that Straub and the officers "'had a meeting of the minds and thus reached an understanding . . . to deny' [Bannon] 'a constitutional right.'" *Id.* (quoting *Wilson v. Warren County*, 830 F.3d 464, 468 (7th Cir. 2016)). "[T]here must have been a real agreement—explicit or implicit—between the parties. Merely working in parallel toward 'a common goal' is not the same as conspiring together." *Id.* (quoting *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1206 (7th Cir. 1980)).

Bannon's allegations against Straub do not reveal a conspiracy with the police to infringe on his constitutional right to police protection (to the extent that right exists at all).

14

The amended complaint alleges that Straub went to Bannon's house as a concerned grandfather, entered the home "through a locked garage entry door using a code," "damaged the front door," and "immediately attacked Bannon and yelled and screamed and was angry." *See* Am. Compl. ¶¶ 13–17. All this allegedly happened before the police were involved. The amended complaint further alleges that Straub (or possibly his wife) called 911; that City police officers Bergin, Czarnecki, and Larson responded to the call; and that the officers allowed Straub "to remain in the home and participate in the discussions about [Bannon's] children." *See id.* ¶¶ 7–9, 18–27. There are no facts suggesting a meeting of the minds between Straub and the officers. Thus, I am unable plausibly to infer from the allegations in the amended complaint that Straub was acting under color of law at the time of the incident.[3]

Moreover, the new allegations in the amended complaint do not resuscitate Bannon's Fourteenth Amendment claim. Bannon alleges that

- By allowing Straub to remain, the officers created an increased risk of danger that was the cause of Bannon's injuries;

- The officers treated Straub as if he was acting under color of law and had a legal right to be present and act because of his former elected law enforcement position;

- The officers demonstrated a person animus against Bannon because of how they treated Straub knowing he did not have a legal right to be present;

- The defendant officers treated Bannon differently than others because they gave Straub legal standing to remain in the home and participate in the discussions about the children. The officers also discriminated against Bannon because they allowed Straub's former position to cloud their judgment as if he had any legal rights while in the home. There was no exigent circumstance requiring the officers to be present, nor did the officers arrive with their emergency lights or sirens.

- No reasonable officer would allow Straub to remain in his property without making him leave, whether by direct order to do so or to arrest him, especially as Straub could have been armed, either directly or with a weapon in his vehicle, and in allowing Straub to remain, it shocks the conscience of the danger that could have been.

---

[3] The color-of-law allegations are even weaker in the original complaint. *See* Compl. ¶¶ 23, 25.

15

Am. Compl. ¶¶ 23–27. These conclusory allegations—creative though they may be—add nothing to the plausibility of Bannon's failure-to-protect claim. Put another way, the amended complaint does not include any new, non-conclusory facts suggesting that the defendant police officers created or increased the danger of private violence, engaged in conscience-shocking conduct, intentionally treated Bannon differently from others similarly situated, or lacked a rational basis for their actions.

In sum, even if I were to consider the amended complaint, dismissal would still be appropriate, as it does not cure the defects in the original complaint.

## III. The Court Declines to Sanction Bannon and/or His Attorney

Straub seeks reimbursement for the fees he expended in bringing his motion to dismiss, arguing that there is no basis in law or fact to support a claim that he acted under color of state law. Bannon objects to the sanctions motion on both procedural and substantive grounds.

"Rule 11 requires attorneys to certify that every court filing advances arguments warranted by existing law or a nonfrivolous argument for extending the law." *McGreal v. Village of Orland Park*, 928 F.3d 556, 558 (7th Cir. 2019) (citing Fed. R. Civ. P. 11(b)(2)). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Because sanctions are a serious matter, Rule 11 imposes certain procedural requirements." *Malley v. Farias*, No. 24-C-1116, 2024 WL 5264676, 2024 U.S. Dist. LEXIS 234557, at *4–5 (E.D. Wis. Dec. 31, 2024). "First, the motion for sanctions must be made 'separately from other motions or requests and [must] describe the specific conduct alleged to violate subdivision (b).'" *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025 (7th Cir. 1999) (quoting Fed. R. Civ. P. 11(c)(1)(A)).

16

"Second, to facilitate deterrence, the motion may not be presented to the court unless, within twenty-one days of service, the non-movant has not withdrawn or corrected the challenged behavior." *Id.* (citing Fed. R. Civ. P. 11(c)(1)(A)). A court abuses its discretion if it permits a sanctions motion that fails to comply with either of these procedural requirements. *See id.* (citing *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1058 (7th Cir. 1998); *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 150–51 (7th Cir. 1996)).

Straub's motion for sanctions does not comply with Rule 11's separate-motion requirement. In addition to seeking sanctions under Rule 11, Straub's motion requests to summarily dismiss the complaint under Civil Local Rule 7 for Bannon's failure to respond to the motion to dismiss. *See* Straub's Mot. Sanctions, at 1–2; Straub's Reply, at 1, ECF No. 30 ("Defendant, Maury Straub ('Straub') moved the Court to summarily dismiss Plaintiff's Complaint due to his failure to respond to the motion to dismiss and for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure as there is no basis in law or fact for the claim asserted against Straub."). Because the sanctions motion was not "made separately from any other motion," permitting it would constitute an abuse of discretion. *See Divane*, 200 F.3d at 1025; *see also Malley*, 2024 U.S. Dist. LEXIS 234557, at *4–5 (denying a motion for sanctions that "was brought as a component of [the defendant's] motion to dismiss"); *Felton v. Johnson*, No. 22-CV-1352-SCD, 2024 WL 5088330, 2024 U.S. Dist. LEXIS 224885, at *31–33 (E.D. Wis. Dec. 12, 2024) (denying a request for sanctions made in a summary judgment reply brief); *Hobbs v. Sheskey*, No. 22-cv-680-pp, 2024 WL 1138276, 2024 U.S. Dist. LEXIS 45888, at *35–36 (E.D. Wis. Mar. 15, 2024) (denying a motion for Rule 11 sanctions that was combined with, among other things, a motion to strike and a motion for recusal).

17

Bannon's pleadings must be dismissed. He has abandoned his Fourth Amendment and failure-to-train-and-supervise claims, his failure-to-protect claim is not plausible on its face, and his amended complaint fails to cure the defects in the original complaint. Accordingly, for all the foregoing reasons, the court **GRANTS** the City defendants' motion to dismiss, ECF No. 5; the court **GRANTS** Maury Straub's motion to dismiss complaint, ECF No. 10; and the court **DENIES** Maury Straub's motion to strike amended complaint, ECF No. 31. Because Straub failed to comply with the procedural requirements of Rule 11, the court **DENIES** his motion for dismissal and Rule 11 sanctions, ECF No. 20.

I will not give Bannon a chance to file another amended complaint. "Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)). In this case, it is certain from the face of the complaint that any amendment would be futile. Bannon presumably included all the factual allegations in his arsenal when he filed his amended complaint, and that still wasn't enough. Thus, the clerk of court shall enter judgment that this entire action is **dismissed** and that Bannon shall take nothing from any of the defendants by his complaint or amended complaint. The claims asserted in the original complaint are

**dismissed with prejudice**; the state-law claims asserted in the amended complaint are **dismissed without prejudice**.

      **SO ORDERED** this 24th day of April, 2026.

_____
STEPHEN C. DRIES
United States Magistrate Judge

19